IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY – at COVINGTON

| | | |
|---|---|---|
| **Boone County Republican Party Executive Committee; Hardin County Republican Party Executive Committee; and Jessamine County Republican Party Executive Committee;**[1] | : : : : | Case No. |
| **PLAINTIFFS** | : | |
| v. | : | |
| **H. David Wallace, Laura Marie Bennett, Jessica Burke, Richard Larkin, Adrian Mendiondo, Thomas O'Brien, J. Bissell Roberts**, *all in their official capacities as members of the Kentucky Registry of Election Finance* | : : : : | |
| and | : | |
| **John Steffen**, *in his official capacity as Executive Director of the Kentucky Registry of Election Finance* | : : | |
| **DEFENDANTS** | | |

### PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, through Counsel, and for their Verified Complaint for Declaratory and Injunctive Relief, state as follows:

### INTRODUCTION

1. School choice has become a central issue in American society and politics. In Kentucky in particular, that is especially the case. Certain public schools, including in our most populated areas, have faced increasing criticism and challenges, over issues that include basic

---

[1] To the extent necessary, Plaintiffs also include the respective political parties directed and controlled by the executive committees.

1

transportation problems in getting children to school,[2] testing results that reveal significant deficiencies in larger school districts in the areas of basic reading and math,[3] and deficiencies in career readiness. For its part, the Kentucky General Assembly and its Republican super-majority has addressed these deficiencies in recent years by providing record funding to local schools.[4] Yet that has not alleviated the problems and issues. Frustrated with the lack of progress in public schools in ensuring adequate education, despite billions of dollars in public school funding, the Kentucky General Assembly took measures in 2021 to enact an educational opportunity account law, providing tax credits to permit parents, rather than the state, to make choices on where and how students are educated.[5] The Kentucky Supreme Court ruled the provision unconstitutional in December, 2022. *Commonwealth ex rel. Cameron v. Johnson*, 658 S.W.3d 25 (Ky. 2022).

---

[2] https://www.wdrb.com/news/education/a-year-in-review-of-jcps-transportation-system-busing-issues-in-louisville/article_cf5ab9ee-ea39-11ee-809d-cb20aaa08530.html (last accessed 7/17/2024).

[3] https://nces.ed.gov/nationsreportcard/subject/publications/dst2022/pdf/2023010xj8.pdf (last accessed 7/17/2024); https://www.wdrb.com/in-depth/most-jcps-students-struggle-with-reading-and-math-at-grade-level-diagnostic-testing-shows/article_8eb03f74-d87d-11ec-8b89-430271ed9494.html (last accessed 7/17/2024); https://www.usnews.com/education/k12/kentucky/districts/fayette-county-107072#:~:text=In%20Fayette%20County%20Public%20Schools%2C%2041%25%20of%20elementary%20students%20tested,above%20that%20level%20for%20math (last accessed 7/17/2024).

[4] https://www.prichardcommittee.org/posts/historic-increase-in-education-funding-helps-drive-a-big-bold-future-for-kentucky#:~:text=%E2%80%8D-,Historic%20increase%20in%20education%20funding%20helps%20drive,Big%20Bold%20Future%27%20for%20Kentucky&text=LEXINGTON%2C%20Ky%20%E2%80%94%20As%20the%202024,million%20annually%20in%20education%20funding (last accessed 7/17/2024); https://www.kentuckyteacher.org/leadership/guest-columns/2022/05/2022-kentucky-general-assembly-includes-key-increases-for-education-funding-in-biennial-budget/ (last accessed 7/17/2024).

[5] 21 RS HB 563, https://apps.legislature.ky.gov/record/21rs/hb563.html (last accessed 7/17/2024);

2

2. The Kentucky General Assembly, with a vote that fell largely upon political lines, in 2024, placed a constitutional amendment on the ballot for the November, 2024 election, to permit what *Johnson* forbade, namely to permit the General Assembly to enact school choice legislation.[6] If passed, it will amend the Kentucky Constitution to provide for the following: ***The General Assembly may provide financial support for the education of students outside the system of common schools. The General Assembly may exercise this authority by law, Sections 59, 60, 171, 183, 184, 186, and 189 of this Constitution notwithstanding.*** This will be the second amendment passed by the legislature for consideration by Kentucky's voters on the ballot in the fall of 2024, and is colloquially known as "amendment 2," but we refer in this suit to the foregoing legislation and amendment as the "School Choice Amendment."

3. All of the foregoing efforts by Kentucky's General Assembly are consistent with the Republican Party Platform, including the 2024 Platform, that contained an entire chapter of the platform on cultivating great K-12 schools, that specifically provides for providing universal school choice in every state.[7]

### PARTIES

4. At all relevant times herein, Plaintiffs, the Boone County Republican Party Executive Committee ("BCRP"), the Hardin County Republican Party Executive Committee ("HCRP"), and the Jessamine County Republican Party Executive Committee ("JCRP"), are the duly chartered county party executive committees for the Republican Party; all are also

---

[6] 24 RS HB 2, available at https://apps.legislature.ky.gov/record/24rs/HB2.html (last accessed 7/17/2024).

[7] 2024 Republican Party Platform, at Chapter 7, pages 17-18, at ¶2. Available at: https://prod-static.gop.com/media/RNC2024-Platform.pdf?_gl=1*184yiv3*_gcl_au*MTU5NTA3NzQzLjE3MjExNDQ2NzA.&_ga=2.64768809.702348249.1721235523-854709142.1721144670 (last accessed 7/17/2024).

3

"executive committees" pursuant to Kentucky campaign finance law, including KRS 121.015.

5. At all relevant times herein, Defendants H. David Wallace, Laura Marie Bennett, Jessica Burke, Richard Larkin, Adrian Mendiondo, Thomas O'Brien, and J. Bissell Roberts are the members of the Kentucky Registry of Election Finance ("KREF"), who are all sued in their official capacity.

6. At all relevant times herein, Defendant John Steffen is the Executive Director of KREF, who is also sued in his official capacity.

7. KREF is charged with enforcement of (KRS 121.140), and actively enforces[8] Kentucky's campaign finance laws, arising under KRS Chapter 121.

8. KREF is empowered, pursuant to KRS 121.135, to issue advisory opinions, which are made available to the public and posted online. While, pursuant to the terms of KRS 121.135, the issuance of an advisory opinion provides certain legal protection for the requester who complies with advice given (if the facts provided are also adequately described), it also reflects KREF's view of the law and the scope of Kentucky election finance law, and is made available to the public so others can determine the scope and requirements of law.

9. An advisory opinion serves another purpose as well: to delineate KREF's view of the law so that those who transgress it know that they will be held accountable. Said another way, it serves as threat of enforcement for those who run afoul of any opinion.

10. KREF is also charged, under KRS 121.140, with processing and handling complaints. Upon receipt of a sworn complaint, including by the public or on its own initiative, KREF is required to determine if there is probable cause for a violation. KRS 121.140(2). Once

---

[8] https://kref.ky.gov/legal/Pages/Cases.aspx (last accessed 7/17/2024).

probable cause is established, KREF can then resolve the violation by way of agreement, or hearing. Penalties include up to $5,000 per violation, or, if the violation is made knowingly, the law permits referral to prosecuting attorneys for criminal prosecution. KRS 121.140(2), (4), and (5).

## JURISDICTION AND VENUE

11. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

12. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

13. Venue in this division is appropriate since all of the deprivations of the Boone County Plaintiff's Constitutional Rights occurred and were directed to Boone County (28 U.S.C. 1392(b)(2)), a Defendant resides in this District and Division (28 U.S.C. 1392(b)(1)), and future deprivations of Plaintiff's Constitutional Rights are threatened and likely to occur in this division.

## FACTS COMMON TO ALL CLAIMS

14. On or about June 10, 2024, the HCRP and JCRP wrote to KREF, seeking an advisory opinion on whether they could use funds they raised to advocate in favor of the School Choice Amendment for the November, 2024 general election?[9]

15. In both letters, HCRP and JCPR advised KREF that they wished to and intended to use funds they raised to advocate in favor of the School Choice Amendment for the November, 2024 general election.

---

[9] https://kref.ky.gov/KREF%20Advisory%20Opinions/2024-002%20Requests.pdf (last accessed 7/17/2024).

16. In fact, HCRP, JCRP, and BCRP all have expressly raised funds and solicited donors for donations, for the express purpose of purchasing signs, campaign materials (to include mailers and door-to-door door hangers) that advocate in favor of the Republican party candidates and nominees (both local and national), as well as the School Choice Amendment (the "Joint Expenditures").

17. BCRP, HCRP, and JCRP have each determined that school choice and the School Choice Amendment is a central issue for voters, particularly voters that align with their values, especially in light of the 2024 Republican National Platform and its entire plank on education, including school choice. They have also determined that advocacy in favor of the School Choice Amendment is likely to also substantially assist in electing their nominated candidates, including because driving voter turnout in support for the School Choice Amendment will result in additional voter turnout for nominated Republican candidates.

18. The BCRP equally intends to spend in favor of amendment 1, a provision that prohibits non-citizens from voting in Kentucky's elections. It has equally determined that this amendment is consistent with the party's platform, and will advance Republican nominees for political office and turnout for those candidates in the November, 2024 election.

19. Indeed, well established circuit precedent teaches that a party platform, and the candidates that it endorses, are part and parcel with each other. *Carey v. Wolnitzek*, 614 F.3d 189, 201-202 (6th Cir. 2010) ("A party platform after all is nothing more than an aggregation of political and legal positions, a shorthand way of announcing one's views on many topics of the day").

20. BCRP has raised approximately $20,000 for the purpose of running Joint Expenditures.

21. HCRP has raised approximately $10,000 for the purpose of running Joint Expenditures.

6

22. JCRP has raised approximately $10,000 for the purpose of running Joint Expenditures.

23. BCRP, HCRP, and JCRP are in the process of raising additional funds for the purpose of running Joint Expenditures.

24. For the avoidance of all doubt, BCRP, HCRP, and JCRP each intend to raise, and spend money, in support of election-related communications for both their nominated candidates, and the School Choice Amendment, usually in the same mailer or door-to-door hangers.

25. To that end, BCRP previously had been working with graphic designers on its mail piece that it intends to have printed and reproduced, and mailed, to Republican and Independent voters in Boone County, in October, 2024. A draft of that mail piece, as of July 19, 2024, is attached as **Exhibit A**. While the details of that mailer may change, the general content and intent concerning that mailer, including the mailer's purpose as a Joint Expenditure that advocates for both the ticket and the constitutional amendment, will not. The mail piece must be finalized and submitted to the printer, not later than the first week of October, 2024, to be in a position to be delivered approximately a week prior to the November 5, 2024 general election date, in accordance with BCRP's election-related plans.

26. On July 8, 2024, KREF issued Advisory Opinion 2024-02, attached as **Exhibit B**,[10] in which it opined that executive committees, to include the BCRP, HCRP, and JCRP, could not expend any funds that advocated in favor of the School Choice Amendment (and, by implication, any other constitutional amendment). The opinion was made publicly available on KREF's website for public consumption. Specifically, KREF Advisory Opinion 2024-02

---

[10] Also available at https://kref.ky.gov/KREF%20Advisory%20Opinions/2024-002%20Opinion.pdf (last accessed 7/17/2024).

makes clear that "a county executive committee may not use the funds that it raises … to support a constitutional amendment." *Id.*

27. KREF justified its position in KREF Advisory Opinion 2024-02 because KREF promulgated an administrative regulation, 32 K.A.R. 1:050 that defines "executive committee" as (1) "Executive committee" means an organizational unit or affiliate recognized within the document governing a political party, that raises and spends funds to promote political party nominees, and performs other activities commensurate with the day-to-day operation of a political party, including voter registration drives, assisting candidate fundraising efforts, holding state conventions or local meetings, and nominating candidates for local, state, and federal office," and, according to KREF, spending money to advocate in favor of the School Choice Amendment was not promoting their nominees, and was not part of other day-to-day operations of the party.

28. On July 16, 2024 and July 17, 2024, undersigned Counsel for Plaintiffs wrote KREF, asking them to withdraw KREF Advisory Opinion 2024-02, observing that KRS 121.175 permits all committees to expend funds in favor of (or in opposition to) constitutional amendments, pointing out that advancing causes that are critical platform issues is a function of a political party, and providing case law on why KREF Advisory Opinion 2024-02 is unconstitutional. For the avoidance of doubt, the communication makes clear it is made on behalf of Plaintiffs. A true and accurate copy of those exchanges are attached as **Exhibit C**.

29. Of note, counsel for Plaintiffs asked KREF if they were disavowing any intentions to enforce KREF Advisory Opinion 2024-02, but they declined to disavow such intentions to enforce KREF Advisory Opinion 2024-02. *See* **Exhibit C**. To the contrary, and in response to an inquiry about whether KREF would take enforcement action if Plaintiffs sent election related

mail or door-to-door pieces that advocated in favor of the constitutional amendments, Defendants' General Counsel specifically noted that "I am not able to say that the Registry would ignore a properly filed complaint…" *Id.*

30. Among other things, given the tenor and rancor of the public debate on the School Choice Amendment, it is certain that if BCRP, HCRP, or JCRP expend funds in favor of the School Choice Amendment, Plaintiffs will have a verified complaint filed against them, triggering a review for probable cause by KREF under KRS 121.140(1) and (2).

31. Thus at present, (i) Plaintiffs BCRP, HCRP, and JCRP each have a present intention to expend funds they have raised and intend to continue to raise funds and spend such funds to advocate in favor of the School Choice Amendment including by way of mailers and door-to-door campaign printings; (ii) BCRP has undertaken graphic design efforts to complete these tasks; (iii) KREF has issued correspondence and an advisory opinion, specifically directed to HCRP and JCRP that engaging in these expenditures is not permitted by Kentucky campaign finance law as KREF interprets and enforces it; (iii) KREF accepts complaints from the public; (iv) there will be a complaint filed if BCRP, HCRP, and JCRP spend funds in favor of the School Choice Amendment; and (v) Defendants have not disavowed enforcement and in fact have explicitly indicated that they are "not able to say that the Registry would ignore a properly filed complaint."

32. Plaintiffs' intended protected election-related speech is thus presently chilled, as they are required to either forgo making expenditures in favor of the School Choice Amendment, or face imminent enforcement by KREF for doing so (and potentially criminal prosecutors on a referral from KREF) under KRS 121.140.

9

33. Plaintiffs have thus alleged an intention to engage in a course of conduct arguably affected with a constitutional interest (to spend money on election-related communications in favor of one or both of the pending constitutional amendments); that Defendants content the challenged statutes and actions proscribe, and, if Plaintiffs do so, there will be a certainly impending threat of prosecution/enforcement.

34. The actions set forth herein have and continue to deprive Plaintiffs of their First Amendment rights and is presently irreparably chilling their speech.

35. To be clear, and for the avoidance of all doubt, Plaintiffs intend to begin door-to-door efforts in favor of their candidates by August 31, 2024; that requires orders to be placed for door hangers making Joint Expenditures not later than August 24, 2024 (with the design for such door-to-door pieces needing to be done a few days prior to that), though they will do so earlier if they can. Plaintiffs equally intend to place orders for mail in early October, 2024. None of these activities can occur because of Defendants' actions. *Thus, without injunctive relief issued not later than August 21, 2024, Plaintiffs speech will certainly be chilled and their election-related speech and plans will be interrupted*.

36. Regardless of relief awarded by this Court, the BCRP and HCRP intends to make the expenditures in question in favor of the constitutional amendments; the JCRP, fearing enforcement action, will not do so without injunctive relief. The BCRP and HCRP seeks injunctive relief precluding Defendants from taking any enforcement action against them for such expenditures.

37. Finally, Plaintiffs intend to continue to make expenditures in future election cycles on issues and issues-related campaigns, including on constitutional amendments, tax proposals, and the like, anytime such issues have an intersection with the Republican Party's platform.

## COUNT I – VIOLATION OF FIRST AMENDMENT

### Part I – As Applied Challenge

38. Plaintiffs hereby reincorporate the preceding paragraphs as if fully set forth herein.

39. Plaintiffs are groups comprising citizens of the United States of America.

40. Plaintiffs have a clearly established right under the United States Constitution and its statutes to Freedom of Speech, Association, and Expression and other First Amendment guarantees.

41. Defendants, using their respective offices and acting under color of state law, have violated Plaintiff's First Amendment Rights, which has deprived Plaintiffs, who are citizens of the United States, of their right of Free Speech, and of Association, as guaranteed under the First Amendment of the U.S. Constitution, which rights are clearly established, and therefore subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief, and declaratory relief under 28 U.S.C. § 2201.

42. The First Amendment of the U.S. Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech..."  The First Amendment has been incorporated under the Fourteenth Amendment to apply to the states, including the Commonwealth of Kentucky, under *Gitlow v. New York*, 268 U.S. 652 (1925).

43. Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate Plaintiffs' First Amendment rights.

44. KREF Advisory Opinion 2024-02, and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 constitute spending restrictions (as opposed to a contribution restriction), which triggers strict scrutiny. *Kruse v. City of Cincinnati*, 142 F.3d 907, 912-13 (6th Cir. 1998).  To be upheld, therefore, the campaign-

expenditure restrictions must be both narrowly tailored, *Fed. Election Comm'n v. Nat'l Conserv. Political Action Comm.*, 470 U.S. 480, 496 (1985) ("NC-PAC"), and necessary to serve a compelling state interest, *Fed. Election Comm'n v. Mass. Citizens for Life*, 479 U.S. 238, 251-252 (1986). *See also Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 657, 108 L. Ed. 2d 652, 110 S. Ct. 1391 (1990). That is all the more the case because the restriction at issue would need to look at the content of the communication to determine if it ran afoul of KREF Advisory Opinion 2024-02. *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

45. There is no compelling government interest in preventing Plaintiffs from making election-related expenditures that advocate in favor of the School Choice Amendment to include Joint Expenditures, and, that Plaintiffs contend, will also have the effect of advancing Republican nominees to office.

46. For the avoidance of all doubt, Plaintiffs do not challenge the requirements under Kentucky law that requires them to report their contributors or the expenditures for their communications.

47. Even if Defendants can establish a compelling government interest, any interest is not narrowly tailored by a prohibition on making election-related expenditures that advocate in favor of the School Choice Amendment to include Joint Expenditures.

48. To the extent that Kentucky law prohibits Plaintiffs from making election-related expenditures that advocate in favor of the School Choice Amendment to include Joint Expenditures, it is unconstitutional. KREF Advisory Opinion 2024-02 is unconstitutional.

49. Plaintiffs seeks declaratory relief, and prospective injunctive relief under 42 U.S.C. 1983 and 28 U.S.C. §§ 2201 and 2202, declaring KREF Advisory Opinion 2024-02, and to the extent

they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 unconstitutional, as applied, to the speech and campaign activities set forth herein. Plaintiffs likewise seek a preliminary and permanent injunction enjoining any enforcement by Defendants (including for expenditures made during the pendency of this suit) of KREF Advisory Opinion 2024-02, and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050, as applied to any and/or all of the foregoing scenarios. Plaintiffs further seeks their reasonable attorney fees under 42 U.S.C. § 1988.

Part II – Facial Challenge

50. Plaintiffs hereby reincorporates the preceding paragraphs as if fully set forth herein.

51. In addition to the foregoing, the impermissible applications of the law are substantial when compared against any legitimate sweep of KREF Advisory Opinion 2024-02, and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050.

52. KRS 121.175 and 32 K.A.R. 1:050 are also void for vagueness, because as Defendants have applied and interpreted them, they extend to election-related communications that advocate in favor of constitutional amendments, which have the effect of advancing the candidacy of Republican nominees. No reasonable person could discern a violation of these provisions from simply reading them on their face from advocacy in favor of the School Choice Amendment to include Joint Expenditures, and yet they are being extended in a manner beyond the face of such provisions by Defendants.

53. KRS 121.175 and 32 K.A.R. 1:050 fail to establish standards that are sufficient to guard against the arbitrary deprivation of liberty interests.

54. A substantial number of instances exist in which KRS 121.175 and 32 K.A.R. 1:050 cannot be applied constitutionally. For instance, it is obvious that the KREF believes a violation exists wherever a party spends funds that KREF does not believe is consistent with "normal" party operations, to include, without limitation, advocacy in favor of the School Choice Amendment to include Joint Expenditures.

55. Plaintiffs further seeks declaratory relief, and prospective injunctive relief under 42 U.S.C. 1983 and 28 U.S.C. §§ 2201 and 2202, declaring KRS 121.175 and 32 K.A.R. 1:050, unconstitutional on their face; Plaintiffs likewise seeks a permanent injunction enjoining any enforcement by Defendants (including for expenditures made during the pendency of this suit). Plaintiffs further seek their reasonable attorney fees under 42 U.S.C. § 1988.

Part III – Emergency Injunctive Relief

56. Plaintiffs hereby reincorporate the preceding paragraphs as if fully set forth herein.

57. Plaintiffs seeks emergency relief, including a preliminary injunction or temporary restraining order, so that Defendants do not continue to cause them irreparable harm, including by chilling their intended forthcoming protected speech.

**WHEREFORE**, Plaintiff demands judgment as prayed for, including:

A. That this Court issue a declaration that KREF Advisory Opinion 2024-02, and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 are unconstitutional, as applied, to the speech and campaign activities set forth herein.

B. That this Court issue a declaration that to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 are unconstitutional on their face because of overbreadth or vagueness;

C.  That this Court award a temporary restraining order and/or preliminary injunction, enjoining enforcement of these rules, on an as-applied or facial basis, including forbidding Defendants from enforcing KREF Advisory Opinion 2024-02 and enjoining any enforcement by Defendants (including for expenditures made during the pendency of this suit) of that provision, and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 against Plaintiffs or generally;

D.  That this Court award permanent injunctive relief, prohibiting any enforcement of KREF Advisory Opinion 2024-02 (including for expenditures made during the pendency of this suit), and to the extent they are implicated by KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050, or, in the alternative, prohibiting enforcement of KREF Advisory Opinion 2024-02, KRS 121.175 and 32 K.A.R. 1:050 as applied to the speech of Plaintiffs as set forth in greater detail herein;

E.  That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

F.  Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest\
Christopher Wiest (KBA 90725)\
Theodore Roberts (KBA 100610)\
Chris Wiest, Atty at Law, PLLC\
50 E. Rivercenter Blvd., Ste. 1280\
Covington, KY 41011\
513/257-1895 (c)\
859/495-0803 (f)\
chris@cwiestlaw.com\
*Counsel for Plaintiffs*

/s/Thomas B. Bruns\
Thomas Bruns (KBA 84985)\
Bruns, Connell, Vollmar & Armstrong, LLC\
4555 Lake Forest Drive, Suite 330\
Cincinnati, OH 45242\
513-312-9890\
tbruns@bcvalaw.com

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Chet Hand, on behalf of the Boone County Republican Party Executive Committee, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on July 18, 2024.

*[signature]*
18 July 2024

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Bobbie Coleman, on behalf of the Hardin County Republican Party Executive Committee, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on July 18, 2024.

*/s/ Bobbie Coleman*

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Kim Garrison, on behalf of the Jessamine County Republican Party Executive Committee, declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on July 18, 2024.

*[Signature]*, Chair of the Republican Party of Jessamine Co.