**chris@cwiestlaw.com**

| | |
|---|---|
| **From:** | Saunders, Leslie M (KREF) <LeslieM.saunders@ky.gov> |
| **Sent:** | Thursday, July 18, 2024 10:07 AM |
| **To:** | chris@cwiestlaw.com |
| **Cc:** | Steffen, John R (KREF) |
| **Subject:** | RE: KREF 2024-02 |

Good morning, Mr. Wiest,

The Registry would agree that county parties have long had a history of engaging in voter education efforts. It's a fair point to make that voting straight ticket does not vote for or against the amendment (once again, because how one votes on an amendment is not inherently a "party" issue). That the county parties were concerned about this sort of confusion and wanted to print some sort of information to alleviate it would have all been facts worth including in Hardin's and Jessamine's initial requests for an Advisory Opinion. There might have been ways of accomplishing what they want to do without dancing so close to a violation of the law.

In response to your question below, obviously I am not able to say that the Registry would ignore a properly filed complaint nor guarantee how the Board would vote to handle the matter if it was presented to them.

If you have any other questions, please let me know.

Sincerely,


Leslie M. Saunders
General Counsel
Kentucky Registry of Election Finance
140 Walnut Street
Frankfort, Kentucky 40601
(502) 782-9342 (Office)
www.kref.ky.gov

**NOTICE: This message does not represent the formal legal opinion of the Registry. For an advisory opinion, you may submit your question in writing in the form of an advisory opinion request as provided by KRS 121.135 and 32 KAR 2:060. Visit our website at https://kref.ky.gov/legal/Pages/Advisory-Opinions.aspx for more information about the advisory opinion process.**

**The information in this message is the sender's business. As such it is confidential and may be legally privileged. If you are not the intended recipient, any disclosure, copying, distribution or action taken or not taken in reliance on it is prohibited and may be unlawful. If you have received this electronic mail transmission in error, inform the sender that you received it and then delete it. Thank you.**


**From:** chris@cwiestlaw.com <chris@cwiestlaw.com>
**Sent:** Wednesday, July 17, 2024 11:56 AM
**To:** Saunders, Leslie M (KREF) <LeslieM.saunders@ky.gov>; Steffen, John R (KREF) <John.Steffen@ky.gov>
**Cc:** 'tj' <tj@cwiestlaw.com>
**Subject:** RE: KREF 2024-02

1

Ms. Saunders:

A separate issues committee does not solve the problem. The intention is to run electioneering communications that jointly advocate for both the Republican ticket (up and down the ballot) as well as the constitutional amendment, including voter education that a straight ticket vote does not vote the amendment. Said another way, the intention is to run mail and door-to-door pieces that advocate for both the Republican ticket and the constitutional amendment, on the same mail and door-to-door pieces.

The issues committee is not permitted, as we understand it, to run electioneering communications (mail and door-to-door pieces) in favor of the Republican ticket.

Are you saying that if the Republican parties spend money advocating in favor of the constitutional amendment, that KREF will not take any enforcement action against them, if a complaint is filed? Please let me know the answer to that question today.

Because if that is the case, I will feel comfortable sharing that position with them (and the media), so they can freely spend in favor of the amendment. If that is not the case, and there is the possibility of enforcement, then that will also weigh into ourcalculus (especially given the rancor of the debate and the interests on both sides of the amendment debate make it a practical certainty that a complaint would be filed if they spent in favor of the amendment).


Christopher Wiest
Chris Wiest, Attorney at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513-257-1895
chris@cwiestlaw.com

---

**From:** Saunders, Leslie M (KREF) <LeslieM.saunders@ky.gov>
**Sent:** Wednesday, July 17, 2024 9:15 AM
**To:** chris@cwiestlaw.com; Steffen, John R (KREF) <John.Steffen@ky.gov>
**Cc:** 'tj' <tj@cwiestlaw.com>
**Subject:** RE: KREF 2024-02

Good morning, Mr. Wiest:

John and I have reviewed the below and I want to make sure that you understand what an Advisory Opinion does and not do. The only effect a Registry Advisory Opinion has is to protect the *requester* from campaign finance sanctions if the requester takes the action set out in the facts he or she provided in the request. (See KRS 121.135(4)(b). At this point the Registry has taken no action against any executive committee, nor is it contemplating action at this time. Further, no complaint has yet been filed that would result in the requesters coming before the Registry Board. In either event, the requester would still have the ability to make any arguments they felt were applicable. Therefore, I'm not sure what action your suit for injunctive relief would address.

Further, an Advisory Opinion has no precedential value and may not be relied upon by anyone besides the requester. (See KRS 121.135(4)(b)) I don't see how anyone you have mentioned below besides the Hardin County Republican Executive Committee would have standing for a lawsuit such as you have mentioned. The only other interested party is Jessamine County.

I once again reviewed the Rules you mentioned below and I see no references to anything other than committee logistics and supporting candidates. I noted that in the newspaper article Monday the state party agrees it only spends on candidates. In fact, I've reviewed some 12,000 line items of expenditures, back to 2022, and have found only seven that reflect party spending on issues. Five of these were from the same county party. This either not something that does not occur regularly or something the county parties aren't reporting fully.

Once again, nothing stops members from Hardin County Republicans from forming a political issues committee and not commingling the funds meant for candidates with the funds for the political issue funds. Nothing stops them from calling it "Hardin County Republicans Political Issue Committee" or "Hardin County Republicans – Vote "Yes" for School Choice" or any of the myriad of other options. Because the reporting schedules for executive committees and political issues committees differ greatly, I am sure you can see where the transparency interest lies. What strikes me as odd is why the county parties wouldn't prefer to put their political issues money into a fund that can accept unlimited contributions (including from corporations) as opposed to one that where the contributions are limited by amount and origin.

We would be glad to speak to you further about this issue, but do not expect to take any other action at this time.

Sincerely,


**Leslie M. Saunders**
General Counsel
Kentucky Registry of Election Finance
140 Walnut Street
Frankfort, Kentucky 40601
(502) 782-9342 (Office)
www.kref.ky.gov

**NOTICE**: **This message does not represent the formal legal opinion of the Registry. For an advisory opinion, you may submit your question in writing in the form of an advisory opinion request as provided by KRS 121.135 and 32 KAR 2:060. Visit our website at https://kref.ky.gov/legal/Pages/Advisory-Opinions.aspx for more information about the advisory opinion process.**

**The information in this message is the sender's business. As such it is confidential and may be legally privileged. If you are not the intended recipient, any disclosure, copying, distribution or action taken or not taken in reliance on it is prohibited and may be unlawful. If you have received this electronic mail transmission in error, inform the sender that you received it and then delete it. Thank you.**


**From:** chris@cwiestlaw.com <chris@cwiestlaw.com>
**Sent:** Tuesday, July 16, 2024 12:00 PM
**To:** Saunders, Leslie M (KREF) <LeslieM.saunders@ky.gov>; Steffen, John R (KREF) <John.Steffen@ky.gov>
**Cc:** 'tj' <tj@cwiestlaw.com>
**Subject:** KREF 2024-02

Dear John and Leslie:

We have been retained to represent the Boone and Hardin County Republican Parties (and are in the process of being engaged by 3 other Republican parties – 2 county parties and a Congressional District Party).

I want to start with applicable Kentucky law.  KRS 121.175 provides that:

No candidate, committee, or contributing organization shall permit funds in a campaign account to be expended for any purpose other than for allowable campaign expenditures. "Allowable campaign expenditures" means expenditures including reimbursement for actual expenses, made directly and primarily in support of or opposition to a candidate, constitutional amendment, or public question which will appear on the ballot and includes, but is not limited to, expenditures for staff salaries, gifts and meals for volunteer campaign workers, food and beverages provided at a campaign rally, advertising, office space, necessary travel if reported, campaign paraphernalia, purchases of advertisements in athletic and scholastic publications, communications with constituents or prospective voters, polling and consulting, printing, graphic arts, or advertising services, postage, office supplies, stationery, newsletters, and equipment which is used primarily for the administration of the campaign, or for fees incurred from
legal services while defending a matter before the Kentucky Legislative Ethics Commission in which the final adjudication is rendered in favor of the candidate.

Plainly then, nothing in the text of KRS 121.175 would restrict an executive committee from making an allowable expenditure, which includes funds used "directly and primarily in support of or opposition to a … constitutional amendment."

The Rules of the Republican Party of Kentucky equally provide wide latitude for local and district parties.  Including advancing potential issues and opportunities by district parties.  Rule 3.0.  And managing and directing the party.  Rule 4.

School choice is a critical component of the Republican national platform.  (https://prod-static.gop.com/media/RNC2024-Platform.pdf?_gl=1*1ih8dte*_gcl_au*MTU5NTA3NzQzLjE3MjExNDQ2NzA.&_ga=2.68937554.2143623856.1721144670-854709142.1721144670 at page 17)

That then takes me to KREF 2024-02.  That opinion is based on the proposition that somehow the Republican party rules do not (allegedly) permit spending in favor of a constitutional amendment that is part and parcel with a key provision of the national platform (which is incorrect), but ignores the explicit statutory authorization in KRS 121.175 to make those funds.  Even worse, KREF 2024-02 is a spending restriction (as opposed to a contribution restriction), which triggers strict scrutiny.  *Kruse v. City of Cincinnati*, 142 F.3d 907, 912-13 (6th Cir. 1998).  To be upheld, therefore, the campaign-expenditure restrictions must be both narrowly tailored, *Fed. Election Comm'n v. Nat'l Conserv. Political Action Comm.*, 470 U.S. 480, 496, 84 L. Ed. 2d 455, 105 S. Ct. 1459 (1985) ("NC-PAC"), and necessary to serve a compelling state interest, *Fed. Election Comm'n v. Mass. Citizens for Life*, 479 U.S. 238, 251-252 (1986). *See also Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 657, 108 L. Ed. 2d 652, 110 S. Ct. 1391 (1990).  That is all the more the case because the restriction at issue would need to look at the content of the communication to determine if it ran afoul of KREF 2024-02.  *Reed v. Town of Gilbert*, 576 U.S. 155 (2015)

I struggle to find any compelling interest that would be served by restricting a political party from spending money on electioneering-related communications to advance a constitutional amendment, that is central to its national platform.  Much less narrow tailoring.  That is all the more the case because contributions to executive committees are publicly reported as required by law, as are expenditures, promoting transparency.

We have been authorized to bring suit in U.S. District Court against the Registry Members in an official capacity and its executive director, and to immediately seek emergency injunctive relief, as our clients had in process campaign communications and mailings that need to be finalized before the election in just a few months.  The last time I had to bring a First Amendment suit against the Registry, it ended up being a six figure attorney fee bill that the Registry incurred.

I would ask that you immediately reconsider KREF 2024-02 and withdraw it, and provide the answer that KRS 121.175 provides for: that executive committees can make the expenditures in favor (or against) constitutional amendments.

Otherwise, I intend to file suit early next week and seek preliminary injunctive relief (and possibly restraining order relief).


Christopher Wiest
Chris Wiest, Attorney at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513-257-1895
chris@cwiestlaw.com