UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION (Covington)

*ELECTRONICALLY FILED*

**BOONE CNTY. REPUBLICAN PARTY EXECUTIVE COMM., et al.**      **PLAINTIFFS**

**v.**                                                                                       **CIVIL ACTION NO. 3:34-cv-49-GFVT**

**H. DAVID WALLACE, in his Official Capacity as Board Member,**
**Kentucky Registry of Election Finance, et al.**                                **DEFENDANTS**

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

_____

Defendants H. David Wallace, Laura Marie Bennett, Jessica Burke, Richard Larkin, Adrian Mendiondo, Thomas O'Brien, and J. Bissell Roberts, board members of the Kentucky Registry of Election Finance ("Registry"), and John Steffen, Registry executive director, all named in their official capacities, respectfully move this Honorable Court to dismiss the Complaint filed against them by Plaintiffs Boone County Republican Executive Committee ("BCREC"), Hardin County Republican Executive Committee ("HCREC"), and Jessamine County Republican Executive Committee ("JCREC") for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(1) and (b)(6). The Defendants respectfully submit the following Memorandum of Law in support of his Motion to Dismiss:

**I. INTRODUCTION**

Federal courts possess limited jurisdiction. *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014); U.S. Const., Art. III, § 2. The Plaintiffs specifically allege that this Court has federal question jurisdiction pursuant to 42 U.S.C. § 1983 and § 1988 and 28 U.S.C. § 1331, §

1343, § 2201, and § 2202.  However, the burden lays squarely on the Plaintiffs to demonstrate the court's subject matter jurisdiction and to state a claim upon which relief can be granted.  A court does not presume the truth of factual allegations pertaining to the issue.  Fed. R. Civ. Pro. 12(b)(1), *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).  Jurisdiction is a threshold question in every federal case.  *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  Here, BCREC, HCREC, and JCREC have failed to plead facts that pass that threshold.

## II. STATEMENT OF FACTS

Plaintiffs are three county-level Republican Party executive committees, those in Boone, Hardin, and Jessamine counties.  Of those three, two availed themselves on June 7, 2024, of the Registry's Advisory Opinion process set out in Ky. Rev. Stat. Ann. ("KRS") § 121.135(1), which states:

> Any person may file a written request with the registry for an advisory opinion concerning the application of the provisions of this chapter or any administrative regulation promulgated by the registry with respect to a specific transaction or activity by the person. The registry shall render a written advisory opinion relating to the specific transaction or activity to the person making the request not later than thirty (30) days after the registry receives the request.

As recounted in Advisory Opinion 2024-02 ("AO 2024-02") and attached to the Plaintiffs' Complaint as Exhibit B, both HCREC and JCREC asked two questions through letters signed by their chairs (Bobbie Coleman for HCREC and Kim Garrison for JCREC) in nearly identical verbiage:

1) May county executive committees make expenditures in support of or against constitutional ballot issues; and

2) If an executive committee may make such expenditures in support or against constitutional ballot issues, what expenditures are allowed and what are prohibited?

HCREC also asked a third question, whether the purchasing of signs and advertising would be an activity that the Registry believed was subject to its regulation, a question and answer which the Plaintiffs do not address further in their Complaint.

The Registry's General Counsel, the undersigned, answered all three questions on July 8, 2024, stating that "executive committee" was not a type of committee defined in Ky. Rev. Stat. Ann. §121.015, the general definitional section of Kentucky's campaign finance statutes, but they were defined in 32 Ky. Admin. Regs. ("KAR") 1:050, the administrative regulation that describe how political organizations required to make campaign finance-related filings under Kentucky law do so. That definition states that an executive committee is:

> . . . an organizational unit or affiliate recognized within the document governing a political party, that raises and spends funds to promote political party nominees, and performs other activities commensurate with the day-to-day operation of a political party, including voter registration drives, assisting candidate fundraising efforts, holding state conventions or local meetings, and nominating candidates for local, state, and federal office.

Nothing in that definition referenced, nor did the rules of the Republican Party of Kentucky discuss, an executive committee spending to advocate for or against ballot issues, thus, the Advisory Opinion stated that, under Kentucky law, executive committees could use funds they would otherwise use to raise and spend to support the party's nominees. It noted, however, that individual members could join together and form political issues committees under KRS §121.015(d). A more exact reading of that statute would be that to the extent three members had pooled money together already that exceeded $1,000, they *were* a political issues committee.[1]

While the Plaintiffs categorize the AO 2024-02 as the state's "threat of enforcement," thus a threat to deprive it of speech and association rights in their Complaint, KRS §121.135 and

---

[1] "Political issues committee. . . means three (3) or more persons joining together to advocate or oppose a constitutional amendment or public question which appears on the ballot if that committee receives or expends money in excess of one thousand dollars ($1,000)[.]"

3

32 KAR 1:060 make advisory opinions no sort of threat, nor even something the Registry produces subject to its own motivations or compliance efforts. The Registry, under KRS 121.135, issues advisory opinions only when requested. However, the statutory and regulatory scheme make clear that advisory opinions are of a limited value and that value accrues only to the requester. First, the opinion must describe a "specific transaction or activity by" the requester in KRS §121.135(1). Under the corresponding administrative regulation (32 KAR 2:060), the request must:

- Disclose the identity of the requester (§1(1));

- Describe a transaction the requester intends to undertake or is presently taking (§ 1(2)(a));[2]

- Not present a general question of interpretation, pose a hypothetical situation, or regard actions of a third party (§1(2)(b)); and

- Contain a complete description of all relevant facts (§ 1(3)).

If the requester meets all of these criteria, KRS §121.135(4)(b) states that:

> [A]ny person or committee to whom a written advisory opinion has been rendered who relies upon any provision or finding of the advisory opinion and who acts in good faith in accordance with the provisions and findings of the advisory opinion shall not, as a result of any act with respect to a transaction or activity addressed by the advisory opinion, be subject to any sanction provided by this chapter or any administrative regulation promulgated by the registry.

The statute also makes clear that:

---

[2] Plaintiffs have asked for this case to move in an expedited manner, because they anticipate beginning door-to-door campaigning on August 24, 2024. Thus, they ask for relief by August 21, 2024, in order to have time to print material similar to that provided in the Complaint and distribute it to campaign workers. It is worth noting that the time crunch has been created by HCREC and JCREC waiting until June to ask a question that they could have asked at any time after the bill was delivered to the Secretary of State on March 21, 2024, when it became clear there would be a ballot issue to support, to the extent they were intending to spend committee funds to support it.

4

> It shall be no defense in any civil or criminal proceeding regarding a violation of any provision of this chapter or any administrative regulation promulgated by the registry for a person or committee to claim that he relied upon and acted in good faith based upon any provision or finding of an advisory opinion if the person or committee was not the person or committee involved in the specific transaction or activity with respect to which the advisory opinion was rendered.

In this instance, HCREC and JCREC requested opinions based on the same, quite limited, fact pattern. The committees stated nothing more than, in JCREC's case:

> We want to promote and support the passing of Amendment 2 on School Choice that will be on the ballot this November. We anticipate spending money on texts, signs, and other advertising/promotional materials. There are many other groups, such as teachers' unions, promoting their thoughts on the issue.

HCREC's request stated that the committee "wants to spend money on signs and other advertisements in favor of the school choice amendment that will be on the Kentucky ballot November 5, 2024."[3] BCREC did not make a request for an advisory opinion, nor was it even mentioned in the other requests. Also absent from this request was any suggestion of "joint expenditures"[4] as described in the Plaintiff's Complaint or the layout of a potential mailer itself, as attached to the Complaint as Exhibit A. At the time the requests were made, they were posted, as required by statute, for ten days, for public comment. The Registry received no comments, not even from BCREC.

As evidenced in the Complaint's Exhibit C, shortly after the release of AO 2024-02, on July 16, 2024, one of the named counsel in this matter for the Plaintiff, Chris Wiest, contacted

---

[3] AO 2024-002 was provided as Exhibit B to the Complaint. The initial requests were not, but are available on the Registry's website at https://kref.ky.gov/KREF%20Advisory%20Opinions/2024-002%20Requests.pdf. They are attached as Exhibit A to this memorandum.

[4] The Registry is unclear on the nature of the "joint expenditures," because, although the Complaint treats it as a term of art, it is not one used in Kentucky campaign finance law. The Plaintiffs do not make clear whether the candidate portion is treated as a contribution to the candidate or an independent expenditure for the candidate. Either would be reported as an "expenditure" by BCREC, but incur different reporting requirements, to different parties, when made.

5

the Registry to threaten action in federal court if the Registry did not withdraw the advisory opinion. However, at that time, counsel said he represented HCREC and BCREC. The Registry attempted to explain that the AO 2024-02 took no action of itself, but acted only as a defense to an action. Further, BCREC would not be able to avail itself of that defense, no matter what the outcome of the opinion had been, as it had not been a requester.

The Registry noted that any individuals who wish to support the amendment could form a political issues committee, call it anything they like, up to and including "Hardin County Republicans – Vote 'Yes' for School Choice," and stay within the law. Further, the Registry noted that, as discussed above, it did not see the way a committee registered as a distinction without a difference because the reporting schedules are so different. Although both kinds of committees require chairpersons, treasurers, and the tracking of information about every contribution received and expenditure made, the reporting schedule for political issues committees align with the election cycle, while executive committees report either semiannually or, as of legislative changes this year, annually, depending on whether or not they had more than $10,000 in their campaign fund account. KRS §121.180(2)(c).

On July 17, 2024, Mr. Wiest emailed the following:

A separate issues committee does not solve the problem. The intention is to run electioneering communications that jointly advocate for both the Republican ticket (up and down the ballot) as well as the constitutional amendment, including voter education that a straight ticket vote does not vote the amendment. Said another way, the intention is to run mail and door-to-door pieces that advocate for both the Republican ticket and the constitutional amendment, on the same mail and door-to-door pieces.

Here, for the first time, the Registry was advised that some executive committees were interested in spending on advertising that looked something like the advertising provided with the Complaint as Exhibit A, which represented a different question entirely, one not covered by

6

the Registry's AO 2024-02. This is clear in the Registry's email response, which agrees that county executive committees have a long history of voter education efforts and that educating voters on how straight ticket voting works could be a part of the executive committees' job in the counties. The Registry noted, which would be true no matter what the outcome of an advisory opinion, that it cannot refuse to process a complaint properly filed under KRS §121.140. Advisory opinions, once again, only act as a defense to enforcement action. In response to the Registry's email on Thursday, July 18, 2024, the Plaintiffs filed this matter on Monday, July 22, 2024. Plaintiffs, simultaneously with their Complaint, filed motions for a temporary restraining order, preliminary injunction, permanent injunction, and summary judgment.[5]

### III.   LEGAL STANDARDS FOR RULE 12(b)(1) AND 12(b)(6) MOTIONS

#### 1.  Rule 12(b)(1)

As courts of limited jurisdiction, federal courts must have a constitutional or statutory basis for exercising that jurisdiction. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, and if none exists, the case must be dismissed. *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 435 (6th Cir. 2006). If a Rule 12(b)(1) motion attacks Plaintiff's claim of jurisdiction on its face, then the court treats all allegations in the complaint as true. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *abrogated on other grounds by San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) ;

---

[5] This Court denied the Motion for Temporary Restraining Order on July 24, 2024, finding that the Plaintiffs had not alleged, and the Court found unlikely, that the Registry would review the Plaintiffs' use of campaign funds inside of 14 days, nor would a TRO keep the Registry from seeking enforcement following the end of that period. The Court acknowledged at that time that "violation of one's constitutional rights is an irreparable harm," but that any potential harm was not preventable by the Plaintiffs' choice of remedy. The Registry, of course, argues below that there has been, in fact no harm or threat of harm.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). The Plaintiff then bears the burden of proving that the court possesses subject matter jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

### 2. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the sufficiency of the Plaintiffs' Complaint, thus the court must read the complaint in the light most favorable to the Plaintiff and "accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). The Plaintiff's complaint must plead "more than the bare assertion of legal conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). The court cannot accept as true the Plaintiffs' legal conclusions or unwarranted factual inferences, and dismissal is required if the court determines that the Plaintiff can prove no set of facts that would entitle him to the requested relief. *Id*. at 1239-40.

### IV. ARGUMENT

#### A. Plaintiffs Lack Standing to Sue the Defendants Because They Have Not Suffered an Injury in Fact Due to the Defendant's Conduct.

Article III of the United States Constitution confers judicial power on the federal courts only in "cases and controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 499 (1975), see also *Feiger v. Michigan Supreme Court, et al.*, 961 (6th Cir. 2009). This court may dismiss claims for lack of subject matter jurisdiction, if Plaintiffs cannot establish constitutional standing. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 6th Cir. 2007). This is true, even when the case involves the First

8

Amendment. Even in a First Amendment case, Plaintiffs have the burden of establishing Article III standing. *Feiger.* at 961-962.

To establish standing, Plaintiffs must show:

(1)  They have suffered an "injury in fact" that is both (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical;

(2)  The injury is fairly traceable to the alleged actions of defendant; and

(3)  It is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Plaintiffs must " . . . allege and/or demonstrate actual present harm or a significant possibility of future harm." *Feiger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006), citing *Peoples Right Org., Inc. v. City of Columbus,* 152 F.3d 522 (6th Cir. 1998); see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 199 L.Ed.2d 351 (1992).

To satisfy the first element of standing, Plaintiff must allege an actual injury or a real and immediate threat of injury. *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, 716 (6th Cir. 1995), see also *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)(threats of injury must be "real and immediate," not "conjectural" or hypothetical"). In this case, the most concrete harm alleged is that HCREC and JCREC do not have access to a defense, by virtue of a favorable KRS 121.135 advisory opinion, against a potential complaint no third party has made or an enforcement action that the Registry has not threatened. BCREC, having not been one of the requesters of 2024-002, stands in no different position than it did had the Registry never issued the 2024-002 in the first place.

Given that the Registry was not provided with the full facts of the "specific transaction or activity" that the Plaintiffs wished to conduct, the Defendants would argue that, without conceding the issue of whether executive committees can spend on political issues, 2024-02

9

currently does not apply to the situation in which the Plaintiffs wish to engage. As evidenced by the Registry's email exchange with Plaintiffs' counsel, had HCREC and JCREC more fully explained the nature of these "Joint Expenditures," which the Plaintiffs still have not fully clarified, the resulting Advisory Opinion would not have looked the same.

Plaintiffs have attempted to categorize 2024-02 as a "warning letter," such as the letter issued by the Ohio State Dental Board in *Kiser v. Reitz, 765 F. 3d 601 (6th Cir. 2014)*, in which the board issued a letter to a regulated dentist stating that it had recently concluded an investigation. During that investigation into a particular patient's treatment, and "concerns [had] arisen" regarding the scope of his practice and his advertising of it. *Id.* at 605. In that case, the 6th Circuit noted that the Supreme Court in *Texas v. United States*, 523 U.S. 296 (1998) held courts should not adjudicate claims "if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal citations omitted.) The 6th Circuit continued:

> A plaintiff satisfies this requirement when he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). When a plaintiff has engaged in a course of conduct and the state has instructed him to stop or face disciplinary action, we may infer a threat of prosecution that is neither "chimerical," *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (internal quotation marks omitted), nor "imaginary or wholly speculative," *Babbitt,* 442 U.S. at 302, 99 S.Ct. 2301. Under such circumstances, a plaintiff has adequately alleged a concrete and imminent harm sufficient to meet the "injury in fact" requirement.

*Kiser* at 608.

Because of this, it found that Kiser had suffered harm that resulted from the Board's particularized threatened enforcement against him, the result of an investigation. Such is not the case in the matter currently before the Court. Here, two of the Plaintiffs requested an opinion,

10

which the Registry gave as required by statute. The Registry has engaged in no enforcement action against those two Plaintiffs (nor indicated it intended one) and has said nothing of the third at all, except that it did not view the advisory opinion as being relevant to it. While the Plaintiffs claim they are chilled in proceeding with planned advertising on a ballot issue, their response to AO 2024-02 is speculative at best and misguided at worst.

**B. Even if Plaintiffs Had Standing to Sue Defendants, They Have Failed to State a Claim Upon Which This Court Can Grant Relief.**

Plaintiffs claim to suffer irreparable harm because they could face criminal penalties as a result of AO 2024-02. However, Plaintiffs cannot reasonably base their claims of irreparable harm on the fear that the Registry, through the Defendants, will criminally prosecute them. Kentucky's Attorney General is the chief enforcement officer of criminal violations of Kentucky's campaign finance law. The role of the Registry is civil: to assure the integrity of Kentucky's electoral process by making certain there is full public access to campaign financial data and financial disclosure reports, and by administering Kentucky's campaign finance laws. The Registry's regulatory function includes tracking of candidate and committee election finance activities, audit functions, investigations, review of and response to requests for advisory opinions, and adjudication of administrative charges of violations of campaign finance laws. KRS § 121.005, et seq.

The Registry's jurisdiction is limited to Chapter 121 of the Kentucky Revised Statutes. However, KRS Chapter 121 does not provide the only means by which a campaign finance violation may be initially investigated. *Naegele Outdoor Advertising Co. v. Moulton*, 773 F.2d 692, 694-95 (6th Cir. 1985) cert. denied, 475 U.S. 1121 (1986), see also *Democratic Party of Kentucky v. Graham*, 976 S.W.2d 423, 429-30 (Ky. 1998). KRS § 121.140 expressly

contemplates that the Attorney General or appropriate local prosecutor has responsibility for prosecutions of Kentucky's campaign finance law. *Naegele* at 697. Thus, Plaintiffs fail to allege an injury in fact when it argues that it fears criminal prosecution, and even if the Court finds that an injury has been alleged, the injury is not fairly traceable to the Defendants and will not be redressed by a favorable decision.

To the extent that Plaintiffs fear civil action by the Registry, the relief the Plaintiffs have requested, that this Court declare AO 2024-002, KRS §121.175, and 32 KAR 1:050 unconstitutional and enjoin the Registry from enforcing them, would not similarly address the Plaintiffs' perceived injury. Once again, the sole legal effect of an advisory opinion is as a defense against an enforcement action. KRS §121.135:

> Notwithstanding any other provision of law, any person or committee to whom a written advisory opinion has been rendered who relies upon any provision or finding of the advisory opinion and who acts in good faith in accordance with the provisions and findings of the advisory opinion shall not, as a result of any act with respect to *a transaction or activity* addressed by the advisory opinion, be subject to any sanction provided by this chapter or any administrative regulation promulgated by the registry. [Emphasis added.]

KRS §121.135 does not grant the Registry through the advisory opinion process the ability to make, change, or invalidate law. It does not declare a moratorium on enforcement on a particular issue, nor does it signal the start of a compliance program. It only grants the requester safe harbor for the particular transaction, even if the Registry later determines that interpretation to be wrong. To declare an advisory opinion unenforceable only would remove that chance at a defense, if applicable. Plaintiffs have not identified any right, privilege or immunity for 42 U.S.C §1983 purposes of which they have been deprived.

KRS §121.175, in any event, was not addressed in the AO 2024-02, nor was it the basis of the Registry's decision, and neither declaring it, nor 32 KAR 1:050 unconstitutional would change the definition of "political issues committee" in KRS §121.015.

## CONCLUSION

Plaintiffs fail to state a claim that their First Amendment rights to political expression have been impermissibly impaired by the Registry issuing an advisory opinion that two of the three of them requested under KRS §121.135.  Plaintiffs have alleged no injury in fact to be addressed by the Court.  Therefore, Plaintiffs' claim on this basis should be dismissed under Rule 12(b)(1).  Although Plaintiffs allege the harm of potential prosecution, Registry action, or defense against a third party Complaint, they have not shown that a favorable outcome in this action, particularly any form of relief they requested, would redress any of those potential harms.  Therefore, these claims should also be dismissed pursuant to Rule 12(b)(6).

Respectfully submitted,

*/s/ Leslie M. Saunders*
_____
Leslie M. Saunders
General Counsel
Kentucky Registry of Election Finance
140 Walnut Street
Frankfort, Kentucky 40601
LeslieM.Saunders@ky.gov
(502) 573-2226 (phone)
(502) 573-5622 (fax)
*COUNSEL FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, I electronically filed the foregoing document with the Court by using the CM/EFC system, which will send a notice of electronic filing to the Hon. Christopher Wiest (email address: chris@cwiestlaw.com), the Hon. Theodore Roberts (email address: tjroberts223@gmail.com), and the Hon. Thomas Bruns (email address: tbruns@bcvalw.com). Further service will be provided to the Kentucky Attorney General, Office of the Attorney General, 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601-3449, by copy sent via first class mail, postage pre-paid.

*/s/Leslie M. Saunders*

Leslie M. Saunders
*COUNSEL FOR DEFENDANTS*