UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| BOONE COUNTY REPUBLICAN PARTY EXECUTIVE COMMITTEE, *et al.*, | ) ) ) ) | Case No. 3:24-cv-00049-GFVT |
| Plaintiffs, | ) ) ) | |
| V. | ) ) ) | **OPINION & ORDER** |
| H. DAVID WALLACE, *et al.*, | ) ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

The Constitution does not require that political speech be absolutely free from governmental requirements related to the message. With that said, governmental requirements can become so burdensome that there is a risk that they actually limit the message. When that line is crossed, it contravenes the protections of the First Amendment.

This case presents the question of whether a Kentucky statute and Kentucky Registry of Election Finance regulations cross the line described. The Plaintiffs seek an Order preventing the Defendants from taking enforcement action against them if, as Executive Committees, they use funding to advocate in favor of a constitutional amendment on the November ballot. Simply put, the Plaintiffs contend that the line has been crossed. But on the facts presently before the Court, that is not likely to be the case. For the reasons set out below, the Motion for Preliminary Injunction [R. 6] is **DENIED**.

**I**

In March 2021, the Kentucky General Assembly enacted House Bill (HB) 563. Under HB 563, Kentucky taxpayers who donate to account-granting organizations (AGO) receive

essentially a dollar-for-dollar tax credit against their income taxes. These AGOs allocate taxpayer contributions to education opportunity accounts (EOA), which can be used for education-related expenses. The primary goal behind this tax structure was to assist in reducing the cost of nonpublic school tuition. The law became effective on June 29, 2021, but was short-lived. On December 15, 2022, the Kentucky Supreme Court found the law was unconstitutional under Section 184 of the Kentucky Constitution. *Commonwealth ex rel. Cameron v. Johnson*, 658 S.W.3d 25 (Ky. 2022). Section 184 provides that "no sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal votes." Ky. Const. § 184.

In response to the Supreme Court's opinion, the Kentucky General Assembly placed a constitutional amendment on the ballot for November 2024. The Kentucky Registry of Election Finance (KREF) is tasked with, *inter alia*, "administering Kentucky's campaign finance law." About, *Kentucky Registry of Election Finance*, https://kref.ky.gov/about/Pages/default.aspx (last accessed July 24, 2024). As part of the enforcement scheme, KREF can issue advisory opinions pursuant to KRS § 121.135.

In June 2024, the Jessamine County Republican Party Executive Committee (JCRP) and the Hardin County Republican Party Executive Committee (HCRP) wrote to KREF seeking an advisory opinion on whether they could use funds to campaign in favor of the School Choice Amendment on the November 2024 election ballot. The Boone County Republican Party Executive Committee (BCRP) did not request an advisory opinion, although they are a party to this suit.[1]

---

[1] The Defendants argue that BCRP cannot bring a preliminary injunction motion due to their failure to request an advisory opinion. [R. 14 at 7.] The Court disagrees. The Supreme Court found that when a Plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder," the burden for a preliminary injunction has been met.

BCRP, as well as JCRP and HCRP, have all raised money with the explicit purpose of campaigning in favor of the School Choice Amendment. Specifically, the Plaintiffs seek to invest in "election-related communications for both their nominated candidates, and the School Choice Amendment, usually in the same mailer or door-to-door hangers." *Id.* at 7. The mail piece must be finalized by October 2024 in order to be delivered before the November 5th election date.

On July 8, 2024, KREF issued Advisory Opinion 2024-02, in which they found that the Plaintiffs could not expend funds that advocate in favor of the School Choice Amendment. As support KREF found that within the definition of "executive committee" in 32 KAR 1:050, the Plaintiffs are only entitled to "raise[] and spend[] funds to promote political party nominees," not advocate for a constitutional amendment. Further, KREF found that advocating for a constitutional amendment was not part of "other activities commensurate with the day-to-day operations of a political party." *Advisory Opinion 2024-02*, Kentucky Registry of Election Finance (July 8, 2024), https://kref.ky.gov/KREF%20Advisory%20Opinions/2024-002%20Opinion.pdf.

After the issuance of the Advisory Opinion, Mr. Weist, counsel for the Plaintiffs, emailed KREF to say that the Plaintiffs "intention is to run electioneering communications that jointly advocate for both the Republican ticket (up and down the ballot) as well as the constitutional amendment, including voter education that a straight ticket vote does not vote for the amendment." [R. 14 at 11.] In their Response, the Defendants appear to contend that this particular framing of the issue presents "a different question entirely" than what was covered in

---

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The Court finds that because BCRP has alleged their intent to engage in the same conduct as JRCP and HCRP, the same threat of prosecution exists to BCRP as well.

3

the AO 2024-02.  *Id.*   In their initial request, JCRP and HCRP both stated "they want to promote and support the passing of Amendment 2 on School Choice," but said nothing about voter education or joint expenditures.  [*See* R. 14-3 at 1-2.]

Nonetheless, the Defendants reiterated at the Preliminary Injunction hearing that the Plaintiffs cannot advocate in favor of the School Choice Amendment *as an Executive Committee*.  The Plaintiffs, however, could advocate for the School Choice Amendment if they formed a Political Issues Committee—but they could not advocate for a political candidate as a Political Issues Committee.  Stated another way, there is no way for the Plaintiffs to advocate for both political candidates and political issues, such as the Constitutional Amendment in question, without having to operate as both an Executive Committee and a Political Issues Committee.

The Plaintiffs feel certain that if they were to expend money in favor of the School Choice Amendment, they would face an enforcement action, effectively chilling their election-related speech.  As such, the Plaintiffs filed the present action arguing the Defendants' AO 2024-02 violated the First Amendment.  As relief, the Plaintiffs seek "a preliminary injunction or temporary restraining order" prohibiting the Defendants from continuing to chill the Plaintiffs' speech.  On July 24, 2024, the Court denied the Plaintiffs' request for a Temporary Restraining Order, finding that the TRO is not the proper vehicle for the relief that the Plaintiffs seek.  Rather, the Court set an expedited briefing scheduled for the Motion for Preliminary Injunction, which concluded on August 14, 2024.  [R. 13.]  A Preliminary Injunction hearing was held on August 16, 2024.  [R. 19.]

## II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."

*Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power . . .")). Because of the unique procedural posture brought on by a Motion for Preliminary Injunction, the Court notes that the nature and purpose of a preliminary injunction informs the analysis. As the Supreme Court has stated:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

*University of Texas v. Camenisch*, U.S. 390, 395 (1981). Therefore, the findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits. *Id.* It is through this lens the Court makes the following findings of fact and conclusions of law.

To issue a preliminary injunction, the Court must consider whether: (1) the movant shows a strong likelihood of success on the merits; (2) the movant will suffer irreparable harm if the injunction is not issued; (3) the issuance of the injunction would cause substantial harm to others; and (4) the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573.

The Sixth Circuit noted that "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). The

5

Defendants argue that the Plaintiffs are unlikely to succeed on the merits because they do not have standing to pursue this action.² [R. 14 at 12-13.] Accordingly, the Court's analysis begins with standing. Standing requires (1) an injury-in-fact that is (2) traceable and (3) redressable. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## A

The Defendants primarily focus on the Plaintiffs' claimed injuries, arguing that they are hypothetical, not actual and imminent. [R. 14 at 12-13.] Because the Plaintiffs seek injunctive relief before the Defendants have begun enforcing the Rule, this implicates decades of precedent considering when an expected injury affords standing. Pre-enforcement review is permissible if threatened enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). A movant must establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). If such circumstances are shown, the Plaintiffs have "adequately alleged a concrete and imminent harm sufficient to fulfill the 'injury in fact' requirements." *See Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014).

The injury requirement cabins the federal courts' power. *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1177 (D.C. Cir. 1982) (Bork, J., concurring) ("[I]njury in fact, far from being a simple, descriptive term, is a concept freighted with policies that limit the kinds of injury courts may consider."). Both its constitutional and prudential elements are "founded in concern about the proper—and properly limited—role of the court in a democratic society." *Id.* (quoting *Warth*

---

² The Defendants appear to conflate "irreparable injury," which is a requirement for a preliminary injunction, with "injury in fact," which is a requirement of standing. [R. 14 at 11-12.] Because it is unclear as to which injury standard the Defendant is objecting, the Court will assume that the Defendant is objecting to both types of injury.

*v. Seldin*, 422 U.S. 490, 498 (1975)).  Though courts may be tempted to relax standing requirements to reach the merits of a particular issue, avoiding that temptation is an important exercise of judicial restraint which maintains the separation of powers.

Plaintiffs bear the burden of establishing standing.  *Lujan*, 504 U.S. at 561.  And because the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case," the plaintiff must support each element with "the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  Movants must substantiate their claimed injury with evidence establishing that injury.  *Mich. Coal. of Radioactive Materials, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).  Accordingly, the issue is whether the Plaintiffs provide evidence that the statute threatens a certainly impending injury.

The Plaintiffs here want to advocate both in favor of a political candidate and a constitutional amendment.  However, according to the Advisory Opinion, the Plaintiffs are not allowed to advertise for the constitutional amendment as an Executive Committee under the current statutory structure.  Because KREF has not yet enforced its regulations in a disciplinary way against the Plaintiffs, they cannot demonstrate a past injury.  However, the Court finds that the Plaintiffs have alleged a sufficient threat of future prosecution to demonstrate an injury in fact.

1

With respect to the intention to engage, the Plaintiffs have indicated a clear intent that they plan to engage in the alleged course of conduct.  [*See* R. 1 at 7.]  In their Complaint, the Plaintiffs assert that "BCRP, HCRP, and JCRP each intend to raise, and spend money, in support of election-related communications for both their nominated candidates, and the School Choice Amendment."  *Id.*  The Court finds that this declaration indicates a clear intent to engage in the

precise conduct at issue in this case.

2

With respect to whether the alleged conduct is "arguably proscribed" by this statute, this requirement is met. KREF made clear in both their Advisory Opinion and Preliminary Injunction hearing that they interpret KRS 121.175 and 32 KAR 1:050 as prohibiting an Executive Committee from advocating for constitutional amendments, which is the precise conduct the Plaintiffs wish to engage. Based on the foregoing, the Plaintiffs ability to participate in the conduct they wish is arguably proscribed by KRS Chapter 121.175 and 32 KAR 1:050.

3

The last requirement is whether there is a threat of prosecution. A credible threat is defined as a "credible fear" that the state or its agents will in fact enforce the law against the Plaintiffs. *Kiser*, 765 F.3d at 609. Oftentimes, prior enforcement of the law in question provides sufficient evidence of a credible threat. *Id.* Due to the unique nature of an Advisory Opinion, neither party has alleged specific instances of KREF enforcing KRS 121.175 as it relates to the set of facts provided. Nonetheless, KREF is charged with enforcing KRS Chapter 121, and they have done so in the past. KRS 121.120(1)(e). As part of their enforcement function, KREF is allowed to issue advisory opinions to provide guidance on their interpretation of the statute. *See* KRS 121.120(1)(f). It logically follows that because KREF has the authority to enforce and has issued an unfavorable Advisory Opinion in this matter, there exists a credible threat of enforcement. Further, the Sixth Circuit has found that "when the administrative agency 'ha[s] not disavowed enforcement if [the plaintiffs] make similar statements in the future,'" this provides additional support that there is a credible threat. *Kiser*, 765 F.3d at 609 (internal quotes

8

omitted).³  Here, KREF has not disavowed any threat of enforcement.

Further, the Plaintiffs face potential fines and referral to the Attorney General's office for criminal prosecution.  *See* KRS 121.120(4)(n); KRS 121.990.  The Court finds that these serious potential consequences contribute to a finding of injury in fact.  Neither party disputes the causal connection between the Plaintiffs injury and the allegedly unconstitutional statute.  Further, the Plaintiff has properly alleged that their injury will be redressed by a favorable decision.  [R. 1 at 10.]  Accordingly, the Plaintiffs' have standing to proceed in this action.

**B**

Having found the Plaintiffs have standing, the Court moves to address the preliminary injunction factors. To issue a preliminary injunction, the Court must balance the following factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Overstreet*, 305 F.3d at 573.  "[W]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, 'the likelihood of success on the merits often will be the determinative factor.'" *Jones v. Caruso*, 569 F.3d 258, 265-66 (6th Cir. 2009). *See also City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014).

**1**

The first part of a preliminary injunction looks at the likelihood of success on the merits. The Plaintiffs rely heavily on *FEC v. Massachusetts Citizens for Life* for the proposition that the

---

³ The Court notes that *Kiser* is distinguishable is some sense because the Plaintiff in that case has multiple warnings from the Board. *Kiser*, 765 F.3d at 609.  Due to the delicate nature of the First Amendment violations, while multiple warnings would surely bolster the injury in fact analysis, it is not necessary for a finding of injury in fact.

9

burdens of registering as a Political Issues Committee are too severe, such that the requirement constitutes a violation of the First Amendment. 479 U.S. 238 (1986). But the teachings of *Massachusetts Citizens* is not that expansive. The facts differ significantly from the facts of this case. The Court finds the burden on the Plaintiffs in the present case is minimal, if it imposes a burden at all.

In *Massachusetts Citizens*, the Supreme Court found that the bureaucratic burden placed on Appellant's speech violated the First Amendment. Section 316 of the Federal Election Campaign Act (FECA) (codified 2 U.S.C. § 441b) prohibited corporations from using treasury funds to make an expenditure in connection with a federal election and required that any expenditure made for such a purpose be financed by voluntary contributions to a separate segregated fund. MCFL, a nonprofit corporation, sought to challenge the constitutionality of § 441b.

The Supreme Court found that MCFL clearly violated § 441b, but ultimately found that § 441b violated the Constitution. To determine whether there is a constitutional violation, the Supreme Court noted the Court must first "determine whether the prohibition of § 441b burdens political speech." *Massachusetts Citizens*, 479 U.S. at 251. It is this part of the *Massachusetts Citizens* analysis that the Plaintiffs analogized to the case at hand.

In *Massachusetts Citizens*, the FEC minimized the impact on the MCFL's First Amendment rights by arguing that MCFL "remains free to establish a separate segregated fund, composed of contributions earmarked for that purpose by the donors, that may be used for unlimited campaign spending." *Id.* But the FEC noted that MCFL "is not free to use its general funds for campaign advocacy purposes." *Id.*

Similarly, in the case at hand, KREF also attempts to minimize the infringement on First

10

Amendment rights by arguing that the Plaintiffs can still speak, but in order to advocate for both political candidates and political issues, they must operate as both an Executive Committee and a Political Issues Committee. [R. 14 at 10.] However, unlike *Massachusetts Citizens*, where the Supreme Court found that although § 441b was "not an absolute restriction on speech," it was still "a substantial one." Here, the burden placed on the Plaintiffs is not substantial enough to rise to the level of a First Amendment violation. *Massachusetts Citizens*, 479 U.S. at 251.

In *Massachusetts Citizens*, in order to establish the requisite "separate segregated fund," MCFL was required to "appoint a treasurer," "ensure that contributions are forwarded to the treasurer within 10 or 30 days of receipt," "see that its treasurer keeps an account of every contribution," keep "the name and addresses of any person who makes a contribution in excess of $50," keep record of "all contributions received from political committees," keep "the name and address of any person to whom a disbursement is made," and "preserve receipts for all disbursements over $200 and all records for three years." *Massachusetts Citizens*, 479 U.S. at 253. Further, MCFL was subject to a stringent disclosure schedule, requiring MCFL to file either monthly reports with the FEC or "quarterly reports during election years, a pre-election report no later than the 12th day before an election, and reports every six months during nonelection years." *Id.* at 253.

Not only is the timing of disclosure schedule frequent, but the content of the disclosure requirement was onerous. These disclosure reports "must contain information regarding the amount of cash on hand; the total amount of receipts, detailed by 10 different categories," among many other requirements. *Id.* at 254. Last, "MCFL may solicit contributions for its separate segregated fund only from its 'members' . . . which does not include persons who have merely contributed to" MCFL in the past. *Id.*

Ultimately, the Supreme Court found that these additional requirements imposed a "significant burden" on MCFL's First Amendment rights. *Id.* at 266 (O'Connor, J., concurring). First, the "[d]etailed recordkeeping and disclosure obligations, along with the duty to appoint a treasurer and custodian of the records, impose administrative costs that many small entities are unable to bear." *Id.* at 254. Second, the "duties require a far more complex and formalized organization than many small groups could manage." *Id.* Last, the "[r]estriction of solicitation of contributions to 'members' vastly reduces the sources of funding for organizations." *Id.*

The same can simply not be said of the case at bar. The Plaintiffs need not appoint additional officers to create a Political Issues Committee, as they already are required to have a treasurer as an Executive Committee. *See* KRS 121.170(3) ("All provisions of KRS 121.160 governing the duties and responsibilities of a candidate . . . shall apply to a registered committee."); s*ee also* KRS 121.160(1) ("Each candidate . . . shall . . .designate a campaign treasurer."). In fact, Political Issues Committees could have the exact same members of BCRP, JCRP, and HCRP respectively—they do not need to change anything about their structure or membership.

Further, the primary difference between an Executive Committee and a Political Issues Committee is that a Political Issues Committee has a different disclosure schedule than an Executive Committee. Where an Executive Committee is required to report biannually—one time in July and one time in January, a Political Issues Committee is required to report 60 days, 30 days, and 15 days preceding an election, as well as 30 days following an election in an election year. KRS 121.180(3); KRS 121.180(3)(b). Otherwise, Political Issue Committees are required to report quarterly. *Id.* However, the substance of the disclosures is substantially the same information. [R. 14 at 16 ("[N]o additional information is required, nor left out across the

12

two-reporting scheme.").] Despite Plaintiffs arguments to the contrary, the Court ultimately finds this is largely a matter of disclosure. Because of this, the Supreme Court has acknowledged that "[d]isclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' and 'do not prevent anyone from speaking.'" *Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010) (internal citations omitted).

Last, at the Preliminary Injunction hearing, although not mentioned in the briefing, the Plaintiffs alluded to the fact that the funds raised by a Political Issues Committee are less fungible, meaning they must be used for their articulated purpose and do not roll-over from year-to-year. The Defendants did not dispute this point. The Defendants noted that unexpended funds can be returned pro rata to contributors, donated to charity, or retained to further the same public issue. The Court finds this requirement is not only not burdensome, but it also makes practical sense. The money raised to advocate in favor of the School Choice Amendment should *actually* be spent advocating in favor of said amendment.

In sum, the alleged burdens on the Plaintiffs in this case can be chalked up to a disclosure requirement, and the Defendant has an interest in ensuring electoral finance transparency and integrity, as well as providing the electorate with disclosure information prior to an election. *See Buckley v. Valeo*, 424 U.S. 1, 66–67 (1976). The Court finds that under either the "exacting" scrutiny standard or the rational basis standard, the Defendant has met their burden. Accordingly, the Plaintiff is unlikely to be successful on the merits.

### 2

The second part of a preliminary injunction analysis looks to whether the movant will suffer irreparable harm if the injunction is not issued. *Overstreet*, 305 F.3d at 573. "[T]o the extent that [the moving party] can establish a likelihood of success on the merits of its First

Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Plaintiffs argue that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." [R. 6 at 18 (quoting *Reno*, 154 F.3d at 288).] While the Court agrees with the Plaintiffs' assertion, the assertion is not applicable to these facts. In a case such as this one, where Plaintiffs have failed to demonstrate a strong likelihood of success on the merits of their First Amendment claim, it follows that Plaintiffs have also failed to establish the possibility of irreparable harm. The Court buttresses this conclusion by noting, once again, that although Plaintiffs cannot advocate in favor of the School Choice Amendment as an Executive Committee, they can as a Political Issues Committee—with only a *de minimis* additional burden on their ability to speak.

The Court also notes that the injury-in-fact requirement for standing is distinct from the irreparable harm required for injunctive relief. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995) (noting that while "[t]his inquiry [regarding irreparable injury] overlaps with the standing issue somewhat" grounds supporting a motion for a preliminary injunction "must show more" than mere standing). In other words, not every injury-in-fact can be classified as an irreparable injury. This distinction makes logical sense. If every plaintiff with Article III standing was permitted to circumvent the showing of irreparable harm for injunctive relief, the irreparable harm requirement would be meaningless. Nonetheless, Plaintiffs fail to show how enforcement of the statute creates a risk of irreparable harm, which, as noted above, is a separate and distinct requirement from the injury-in-fact requirement.

**3**

Because both parties combine their arguments relating to harm to others and the public interest, the Court will address both jointly.  Defendants argue that the public has an interest in "knowing about who is spending on a ballot issue." [R. 14 at 15.]  Further, Defendants argue that the Plaintiffs' timing of their "advertising and subsequent request for preliminary injunction ensures that the voting public, will not have a chance to see who contributed to the ballot issue ads for Amendment 2" prior to the election. *Id.*  Plaintiffs charge that Defendants will not be harmed by the issuance of a preliminary injunction, arguing that when a constitutional right is at stake, the balance of harm undoubtedly weighs in favor of an injunction. [R. 17-1 at 22-23.]

The public is clearly the "others" the Court considers in this factor and the public has an interest in maintaining electoral finance integrity and transparency.  The Court finds that the alleged harm to the Plaintiffs in being required to register as both an Executive Committee and a Political Issues Committee is outweighed by the public's interest in having timely disclosures.  Thus, the Court finds the harm to others and the public interest both weigh in favor of KREF.

**C**

Plaintiffs ask the Court for a preliminary injunction preventing the enforcement of AO 2024-02 against them. The Court finds Plaintiffs have failed to show a likelihood of success on the merits of their claims, such that their request for a Preliminary Injunction must be denied. The Plaintiffs have also filed a Motion for a Permanent Injunction and Motion for Summary Judgment [R. 6], and the Defendants have filed a Motion to Dismiss.  [R. 15.]  Because the Court's role in deciding a Preliminary Injunction Motion is different from the standard of both a Motion to Dismiss and a Motion for Summary Judgment, the Court does not address these motions at this juncture.  These motions, however, remain pending before the Court.

## III

Many states, including Kentucky, have imposed financial disclosure requirements on political committees. These requirements are intended to ensure a well-informed electorate and prevent electoral funding corruption. In light of the above analysis, the Court finds that KRS 121.175 and 32 KAR 1:050, as well as the way in which they have been interpreted through the applicable Advisory Opinion is constitutional. The Plaintiffs' speech is not limited, and it is not the job of the Court to invoke a anti-majoritarian decision when the laws in question are simply inconvenient, inelegant, or inefficient. Courts should be modest in the exercise of that power. It is reserved for those rare instances when there is a need to rectify Constitutional violations—none of which have occurred here. *See generally Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) (noting a court may engage in judicial review and issue a remedy revising legislative and executive action only "when necessary in the execution of" its duty to decide a case). Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiffs' Motion for Preliminary Injunction [R. 6] is **DENIED**.

This the 22nd day of August, 2024.

Gregory F. Van Tatenhove
United States District Judge