UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BOONE COUNTY REPUBLICAN PARTY EXECUTIVE COMMITTEE, *et al.*, | ) ) ) ) | Civ. No. 3:24-cv-00049-GFVT |
| Plaintiffs, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| v. | ) ) ) | |
| H. DAVID WALLACE, *et al.*, | ) ) | |
| Defendants. | | |

*** *** *** ***

This matter is before the Court upon the Plaintiffs' Emergency Motion for an Injunction Pending Appeal.[1]  [R. 24.]  For the reasons that follow, the motion will be **DENIED**.

**I**

The Plaintiffs in this matter are the Boone County Republican Party Executive Committee, Hardin County Republican Party Executive Committee, and Jessamine County Republican Party Executive Committee.  Each Plaintiff has raised money with the explicit purpose of campaigning in favor of Amendment 2, otherwise known as the School Choice Amendment, to Kentucky's Constitution.  The School Choice Amendment is one of two constitutional amendments that Kentucky's voters will be able to vote yes or no on in the upcoming November 2024 election.  The Plaintiffs seek to spend their raised funds to advocate in favor of the School Choice Amendment's adoption.

---

[1] The Plaintiffs style their motion as one made pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C). [*See* R. 24 at 1.]  Given the fact that Rule 8 of the Federal Rules for Appellate Procedure governs a parties' motion for an injunction pending appeal to the *appellate* court, this Court surmises that the Plaintiffs' motion is actually one made pursuant to Federal Rule of Civil Procedure 62(d).

In June 2024, the Jessamine County Republican Party Executive Committee ("JCRP") and the Hardin County Republican Party Executive Committee ("HCRP") wrote to the Kentucky Registry of Election Finance ("KREF") seeking an advisory opinion on whether they could use funds to campaign in favor of the School Choice Amendment.[2] On July 8, 2024, the KREF issued Advisory Opinion 2024-02, which explained that the Plaintiffs could not expend their funds to advocate in favor of the School Choice Amendment. *See* Advisory Opinion 2024-02, Kentucky Registry of Election Finance (July 8, 2024), https://kref.ky.gov/KREF%20Advisory%20Opinions/2024- 002%20Opinion.pdf. The KREF's Advisory Opinion relied to 32 K.A.R. 1:050, which is an administrative regulation defining "Executive committee" for the purposes of political organization registration. The KREF advised that, under their interpretation of 32 K.A.R. 1:050, the Plaintiffs, as Executive committees, are only entitled to "raise[] and spend[] funds to promote political party nominees …". *Id*. The KREF further found that advocating for a constitutional amendment was not congruent with "other activities commensurate with the day-to-day operations of a political party." *Id*. In other words, Executive Committees can raise and spend money to promote a slate of candidates, but they cannot raise and spend money to advocate for political issues like a constitutional amendment.

Following the issuance of the Advisory Opinion, the Plaintiffs' counsel emailed the KREF to indicate that the Plaintiffs' "intention is to run electioneering communications that jointly advocate for both the Republican ticket (up and down the ballot) as well as the constitutional amendment, including voter education that a straight ticket vote does not vote for

---

[2] The Boone County Republican Party Executive Committee ("BCRP") did not request an advisory opinion, although they are a party to this action.

2

the amendment." [R. 14 at 11.] Essentially, the Plaintiffs seek to invest in election-related communications for both their nominated candidates *and* the School Choice Amendment utilizing the same mailer or door-to-door hanger. In their initial request to the KREF for an Advisory Opinion, however, the JCRP and HCRP said nothing about jointly advocating for the School Choice Amendment *and* candidates. [*See* R. 14-3.] Rather, their request focused solely on whether they, as an executive committee, could expend funds "in support or opposition of constitutional ballot issues." *Id*. The Defendants have noted on the record that the Plaintiffs' desire to expend funds on candidates *and* the School Choice Amendment presents "a different question entirely" than the issue opined upon in the Advisory Opinion. [R. 14 at 8.]

Still, on July 22, 2024, the Plaintiffs filed suit against the KREF's board members and executive director[3] seeking to enjoin the enforcement of the KREF's Advisory Opinion, and, to the extent that they are implicated, Kentucky Revised Statute § 121.175 and 32 K.A.R. 1:050. [R. 1.] On the same day, the Plaintiffs filed a Motion for a Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Summary Judgment. [R. 6.] Understanding the import of time for the Plaintiffs, the Court ordered an expedited briefing schedule and set a time for a hearing. [R. 13; R. 16.]

On August 22, 2024, having considered the briefing and the Parties' oral arguments, the Court issued an Opinion and Order denying the Plaintiffs' Motion for a Preliminary Injunction. [R. 22.] The Court articulated that a preliminary injunction was not warranted because all of the factors to balance when considering a preliminary injunction weighed in the KREF's favor. The next day, the Plaintiffs filed their notice of appeal to the Sixth Circuit. [R. 23.] The Plaintiffs

---

[3] The board members, named in their official capacities, are H. David Wallace, Laura Marie Bennett, Jessica Burke, Richard Larkin, Adrian Mendiondo, Thomas O'Brien, and J. Bissell Roberts. John Steffen, also named in his official capacity, is the KREF's Executive Director.

3

also filed the instant motion, which expresses its disagreement with the Court's reasoning and asks for an injunction pending appeal to enjoin the enforcement of Advisory Opinion 2024-02[4] and their enforcement of KRS Chapter 121. [R. 24.]  The Court considers now whether an injunction pending appeal is warranted.

<div style="text-align:center">

II

A

</div>

The Federal Rules of Civil Procedure grant district courts the power to grant an injunction pending appeal:  "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(d).  The court must consider the same factors that are traditionally considered when determining whether to grant a preliminary injunction.  *Ramsek v. Beshear*, Civil No. 3:20-cv-00036-GFVT, 2020 U.S. Dist. LEXIS 254912 at *2-3 (E.D. Ky. Aug. 6, 2020) (citing *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  These factors are:  1) the likelihood that the party seeking the injunction will prevail on the merits of the appeal; 2) the likelihood that the moving party will be irreparably harmed absent an injunction; 3) the prospect that others will be harmed if the court grants the injunction; and 4) the public interest in granting the injunction.  *Id*. at 3 (citation omitted).

Here, the Plaintiffs reincorporate the arguments set forth in their previous briefing, but

---

[4] The Plaintiffs have continuously advocated for enjoining enforcement of the KREF's Advisory Opinion.  An advisory opinion is merely a non-binding interpretation of law;  in this case, a letter from the KREF on how they interpret Kentucky's Statutes and Administrative Regulations.  An advisory opinion is not a mechanism that can be "enforced."  Thus, to the extent that they keep asking for such relief, the Court will decline the Plaintiffs' request to enjoin enforcement of the KREF's Advisory Opinion.

also make clear their disagreeance with the Court's reasoning in its Opinion and Order denying temporary relief. [R. 24.] Specifically, the Plaintiffs' quibble is with the Court's determination that the Plaintiffs were unlikely to be successful on the merits. In its Opinion and Order, the Court distinguished *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986), finding that the burden imposed on the Plaintiffs to file a separate disclosure schedule as a Political Issues Committee is *de minimis*. [R. 22 at 10-13.] The Plaintiffs continue to contend that the disclosure requirements for Political Issues Committees, which they would be required to file in order to report any expenditures made advocating for the School Choice Amendment, are so onerous that they have a chilling effect on speech. *Id*. at 2-4. Despite this argument, there has not been any intervening change in law or fact that would change the outcome of the Court's position.

As an initial matter, the Court stands by its previous articulation that this action is primarily one about disclosure. The rub in this case comes down to how the Plaintiffs must report their expenditures, not what they can say or how they can say it. The Plaintiffs are Executive Committees who have raised money to advocate for the School Choice Amendment. The KREF's position is that, under 32 K.A.R. 1:050, Executive Committees cannot spend money on political issues. Fair enough. But Political Issues Committees *can*. And per Kentucky statute, the Plaintiffs are *already*, by definition, a Political Issues Committee. *See* Ky. Rev. Stat. § 121.015(3)(d) ("'Political issues committee,' which means three (3) or more persons joining together to advocate or oppose a constitutional amendment or public question which appears on the ballot if that committee receives or expends money in excess of one thousand dollars ($1,000)").

No one is telling the Plaintiffs that they cannot spend money advocating for candidates and the School Choice Amendment on the same mailer or door-hanger. The Plaintiffs have

5

unbridled freedom to provide the message that they want to provide. But when they do, they will have to report the money spent advocating for the School Choice Amendment separately (as a Political Issues Committee) from the money spent advocating for candidates. Of course, there are additional requirements that money raised to advocate for political issues must be used for the articulated purpose and cannot roll over from year to year. Those requirements do *not*, however, restrict the Plaintiffs in *this* particular case from advocating in their preferred manner. They raised funds for the specific purpose of advocating in favor of the School Choice Amendment. The Plaintiffs *can* use those funds to advocate for the School Choice Amendment, and they can include their message about the School Choice Amendment on the same visual used to promote their slate of candidates. All that the law requires is that they report those expenditures separately.

Still, the Plaintiffs maintain they do not *want* to file their expenditures advocating in favor of the School Choice Amendment separately. They maintain that they should be permitted to report their expenditures as an Executive Committee rather than a Political Issues Committee. The crux of the Plaintiffs argument continues to be that the burden of filing a separate disclosure schedule is too onerous—too onerous, in fact, that it has a chilling effect on speech. As explained previously, the Court disagrees. In denying the Plaintiffs' motion for a preliminary injunction, the Court distinguished *Massachusetts Citizens for Life*, which is the case that the Plaintiffs have primarily relied on throughout their briefing.

In *Massachusetts Citizens for Life*, the Supreme Court found that Section 316 of the Federal Election Campaign Act violated the First Amendment because Section 316, while "not an absolute restriction on speech," was still "a substantial one." 479 U.S. at 252. Section 316 prohibited corporations from using treasury funds to make an expenditure in connection with a

6

federal election and required that any expenditure made for such a purpose be financed by voluntary contributions to a separate segregated fund.  The bureaucratic burden was so great that it effectively created a "disincentive for such organizations to engage in political speech." *Id*. at 254.  This Court articulated in its Opinion and Order why that is not the case here.

The Court explained that the Plaintiffs need not appoint additional officers to create a Political Issues Committee because the Plaintiffs, as an Executive Committee, are already required to have a treasurer.  [R. 22 at 12.]  The Court further explained that the Plaintiffs do not need to change anything about their structure or membership—they could report their disclosures as a Political Issues Committees and have their exact same members.  *Id*.  In essence, the primary difference between an Executive Committee and a Political Issues Committee is that a Political Issues Committee must report under a different disclosure schedule than an Executive Committee.

In their current motion, the Plaintiffs attempt to explain why the Court's previous disposition was incorrect.  They cite the KREF's website, which outlines what is required of Political Issues Committees under Kentucky law.[5]  [R. 24 at 3.]  Essentially, the Plaintiffs list a slew of things that a "separate political issues committee" must do and argue that "these are not *de minimis* requirements." *Id*. at 3-4.  Under KRS § 121.015, Political Issues Committees and Executive Committees of political parties are both defined as a "Committee" for the purposes of Chapter 121.  *See* Ky. Rev. Stat. Ann. § 121.015(3)(d)-(f).  Thus, both types of committees are required to register and provide certain information, and each committees' treasurer would have certain duties.  *See* Ky. Rev. Stat. Ann. § 121.160-170.  But the registration information and

---

[5] The Court notes that this information upon which the Plaintiffs attempt to rely was not previously introduced into the record.  Regardless, even when considering this new information, the Court's ultimate disposition remains unchanged.

7

treasurer's duties are the *same*. The only administrative burden aside from the separate reporting requirements would be filing a registration form.[6] *See* Ky. Rev. Stat. Ann. § 121.170(1). And again, the members of the Executive Committees and their treasurers can be the exact same people as those comprising the Political Issues Committees. This statutory scheme enacted and amended by the Kentucky General Assembly may not be the most efficient. But this Court's mandate is not to override the majoritarian view of the Commonwealth's citizenry when there is no constitutional infringement.

All-in-all, the Court still finds that any potential burden on the First Amendment, if there actually be any burden at all, is insignificant. The Plaintiffs can say what they want to say, and they can say it how they want to say it. Admittedly, to do so, they must undergo a few extra steps. But those steps are not so burdensome that they disincentive speech. Thus, the Court finds no reason to essentially reverse its previous disposition in denying temporary relief.

**B**

The Court should explain an additional reason why granting an injunction pending appeal is unwarranted: timing. From the starting gate, the Court has been, and still is, acutely aware that timing is an issue at the forefront of this action. The Plaintiffs sought a preliminary injunction, and have now sought an injunction pending appeal, on the notion that temporary relief would afford them protection from potential prosecution if they failed to take the steps necessary to accurately report their political issue expenditures. The fact of the matter, however,

---

[6] The Plaintiffs aver that a separate committee would also have to open a separate bank account and write separate checks on expenditures greater than $25. [R. 24 at 3.] It is unclear to the Court at this time whether opening a separate bank account or writing separate checks would be necessary, although the Defendants did allude at the preliminary judgment hearing that there may be problems with co-mingling funds. The record needs to be further developed for the Court to determine with any certainty whether additional administrative burdens like these might actually exist.


is that any temporary relief will not provide the Plaintiffs the protection and result that they ultimately seek.

If the Court were to issue an injunction pending appeal, the Plaintiffs would not receive a get out of jail free card. In other words, any temporary relief would not alleviate the Plaintiffs' potential for prosecution down the road. Instead, they would be faced with a Hobson's choice[7]: report their School Choice Amendment expenditures as a Political Issues Committee or risk the possibility of future prosecution if the request for a permanent injunction was ultimately denied. Explained another way, a temporary injunction would only deflect any possibility of prosecution for campaign finance related infractions until a final decision on the merits was reached. If the Court ultimately finds that Kentucky's laws and regulations are not unconstitutional, then the Plaintiffs would be exposed to potential liability. Thus, even if the Court were to grant an injunction pending appeal, the duty to report separate expenditures would not subside.

### III

The standard for an injunction pending appeal requires the Court to re-engage with the analysis that it recently undertook when denying the Plaintiffs' request for a preliminary injunction. This Court issued a decision finding that the Plaintiffs did not demonstrate a likelihood of success on the merits sufficient to entitle them to a preliminary injunction. For the reasons stated here, the Plaintiffs have failed to show why the Court should depart from its previous decision. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiffs' Emergency Motion for an Injunction Pending Appeal

---

[7] A "Hobson's choice" refers to an apparently free choice when there is no real alternative. The phrase traces its origins to the late Sixteenth and early Seventeenth centuries in England. Thomas Hobson owned a livery stable from which he rented out horses. Hobson gave each customer the choice of taking the horse nearest the stable door or no horse at all.

[R. 24] is **DENIED**.

This the 26th day of August 2024.

Gregory F. Van Tatenhove
United States District Judge